A minute for rebuttal. If you may, that time will be deducted from your initial argument. Thank you. Three, seven years ago when I first began practicing law in Pittsburgh, I was asked to draft a 60-page commercial lease, and the attorney I worked for handed it back to me and said, I must define my terms. And the fundamental failure of the defendant here is that it never defined the word employment. And the fundamental dispute is whether our interpretation of employment as referring only to the traditional employer-employee relationship is a reasonable one. Not the better interpretation? Well, I think it is actually the more reasonable one, and multiple judges on multiple courts in California and Oregon have agreed. The only question becomes, is this interpretation of employment as referring to that word that involves the same root to the employee-employer relationship a reasonable interpretation? Counsel, aren't we supposed to ask in a situation like this how the average person would read the language in the contract? It seems to me that the average person reading this contract would never think in terms of employee-independent contractor. That has the feel of a lawyer's imposition on the rather straightforward language of the contract. Is that the relevant test how an average person would look at it? Do you agree with that? It is one of the tests, but the relevant test is the term ambiguous. But there has to be a perspective, ambiguous from whose perspective? Actually, from the policyholder's perspective. And I think that unlike most legal terms, the difference between an independent contractor and employment is really well understood by the average person. Whether it's a carpenter who wants to make sure that he is paid on an independent contract basis with a 1099 at the end of the year, or the employee who gets paid the W-2. People negotiate their wages when they're hired all the time. And I think the average person, and certainly the average policyholder, understands that when he asks a carpenter to come in a single time to fix his bathroom, that he is not hiring that person as an employee, and he has no obligation to withhold FICA taxes. But numerous judges on numerous courts in California and Oregon have agreed with our interpretation here. And three of those four decisions, finding that this phrase employment practices, and it's an ISO policy, did not reach the employer-employee relationship, were decided before this incident ever arose in 2010. So when the insurance company, in the face of three decisions nationwide, interpreting this language as reaching employer-employee, doesn't redraft the language, I think that's telling. Well, how helpful are those cases really, counsel? I mean, we can get in defined distinctions, but your opponent argues somewhat persuasively that those are really different cases, different context, different language. How helpful are they really? It's the identical language. If we look at the North American Building Maintenance, the fireman's fund insurance company, it is the identical language to the employment practices exclusion in the Argonaut policy here. The exclusion that applies to the comprehensive general liability. And there is a point made in that decision that mirrors the argument we made below, which is that when you itemize employment practices such as demotion, evaluation, reassignment, and discipline, you are defining the term indirectly by talking about what an excluded employment practice is, and that the reasonable interpretation of that is that that does not apply to independent contractors. In fact, at the national, the North American Building Maintenance, the fireman's fund case, says that that is the common sense way to approach that language. Well, counsel, surely independent contractors can be evaluated. They can be humiliated. They can be harassed. Why is it that only employees can be, as you would apply the term here, why is it that only employees can be subjected to those kinds of experiences? Independent contractors don't apply for a job. They typically make a bid. The typical reaction for an independent contractor is that you cease the contract or declare that it's been breached and end the contract. One is not typically disciplined. I mean, I don't discipline the carpenter who builds my addition to my home in Bar Harbor. So I think independent contractors are rarely disciplined. They might be critiqued. I think they are rarely demoted. That makes no sense. They are rarely reassigned. And the only employment-related practice that would clearly apply to an independent contractor among those itemized is slander. But it is not enough that one of the five or six terms used to delineate what employment practices are might fit the facts here. All six of them must. And once again, the test becomes, is our interpretation a reasonable one? Not the only interpretation. But once it is a reasonable interpretation, the language is ambiguous and main law mandates that the insurance company which drafted that policy must have the exclusion construed against it. That narrow construction could have been avoided by simply defining that this employment practice, that it applies to anyone whether in an employee role or in an independent contracting role. And after the three West Coast cases, that was readily available to the insurance services organization for the ISO policy. They make it a point to say that this applies whether you are sued as an employer or in some other capacity which would apply to a case where you sue an individual on the town council who had we fired Mr. Burgess because he had fired an employee, this exclusion would apply. But he didn't fire an employee. He slandered an independent contractor. But the second employment practices exclusion talks about application for employment. And I've never seen an ad for an independent contractor soliciting applications. They solicit bids. And that's the reasonable common sense interpretation or at a minimum a reasonable common sense interpretation. Counsel, the district court in its decision said that you were really trying to, in effect, rewrite this exclusion by taking the phrase employment related and inserting before it employee employment related and thereby doing what you really are not supposed to do and that is trying to rewrite the contract rather than having it evaluated from the perspective of the average ordinary person reading language that seems straightforward. That is not what we tried to do nor is that what we did because every time Maine has tried to define the word employment, be it in its unemployment statute or in the context of municipal liability, it stressed the power to control. And that isn't present here. Thank you. Counsel, your time is up. Before you step away from the podium, Chief Judge Lynch, are there any questions that you would like to ask? No, I have no questions. Thank you. All right. Thank you. Good morning, Your Honors. Richard Yurick for the Oppoly Argonaut Insurance Company. It seems to me that in this case the appellant is trying to establish the following algebraic equation. If I am an independent contractor, I'm not an employee, and if I'm not an employee, I'm not employed. That syllogism obviously is false and is found below is not reasonable. He was employed. He was required to be employed by the statutes which mandated the appointment by the town manager of the town of Sangerville of a plumbing inspector for a one-year period of time. He was employed by the town to engage in the services which were mandated by the statute to be performed by a plumbing inspector. If you look at the definition of the word employ, as did the magistrate below and as the dictionaries in the brief that I have submitted show, when you employ someone, you engage them to do something. You retain them to do something. Employment is the relationship between the employer on the one hand and the person on the other who is engaged, retained, employed to do a particular act. That's exactly what exists here. Counsel, the appellant is right. There is a well-recognized distinction between an independent contractor and an employee. He also makes the point that there are precedents elsewhere which he says support his position and those precedents gave your client fair warning that there was some uncertainty about this employment-related activity language. Grounded in this well-recognized distinction between an independent contractor and an employee and so your client had fair warning and should have taken steps to avoid any uncertainty here. How do you respond to that? I think I have several responses, Your Honor. The first is that I agree. There is a distinct difference between the status of an individual who is an independent contractor and the status of an individual who is an employee. Those different statuses, however, are important for such things as workers' compensation benefits for whether or not vicarious liability should be applied to the person on whose behalf the employee is working. But insofar as the relationship between the two is concerned, the independent contractor and the person who employs him, the employee and the person who employs him, you have an employment. The claim is that that term should have been defined, that the insurer at its peril did not define it. But main law, I suggest, is explicitly clear that there are many words and terms in insurance policies that are not defined. And when they are not defined, you look at the dictionary definition for those terms, at the layman ordinary understanding. May I interrupt you for a moment, please? If I follow your logic. I hope that you do. Well, stay with me for a minute. Any vendor who on a regular basis provides some service to the municipality, let's say school lunch program, is also employed. Do you say that this policy would not apply to them either? If the vendor, if I understand your honest question, the vendor has a contract to supply food and that contract is abrogated by the municipality Or the municipality slanders the vendor and says they sent us bad food. I think in that case, what you have is a situation where the individual is not engaged in employment. Well, what is it? Are they not employed in the business of selling food? He is an employing contractor who has an arrangement, a contract with the town, to supply food to the cafeteria. In this particular instance, what is being supplied, to use that term, by the appellant in this case, are the duties and the obligations imposed upon the office of building, of building, of plumbing inspector by the statutes. There are a number of items that he has to comply with in the statutes. They are imposed upon him once he is appointed. He agrees to do them. If he doesn't do them, he is subject to a fine or an assessment from the town, discipline and evaluation, something which the appellant says is lacking in this case. He is under the supervision and control of the town manager. The town manager looks at what he does. This is imposed by statute. The town manager looks at what he does and the town manager can decide whether or not to reappoint him or can decide if indeed he has violated his obligations to dismiss him, discipline and evaluation. I'm not sure I wholly understand your response to Judge Lucey's question. Are you saying that in that vendor example where a vendor agrees contractually to provide goods or services, in this example goods rather than ongoing services, that that's not an employment-related activity and hence the exclusion would not apply? Are you conceding that? If the vendor is doing nothing but selling food to the town for use in the school system, I think in that case it's an independent contractor and I think in that case the employment-related practice's exclusion would not apply. If, on the other hand, the vendor is retained to, in effect, run the cafeteria, to staff the cafeteria, to conduct the operations of the cafeteria, then at that point, yes, he is employed in that occupation. Part of the definition, which occurs in the various dictionaries that are cited in my brief and which the magistrate below also cite, the important point here is that the fact that the term employment is not defined in the policy does not make it ambiguous. You look at the ordinary definition and you apply it to the situation. Here a policy is issued to the town of Sangreville. The town of Sangreville, under statute, has to appoint a plumbing inspector. Under the statutes, the plumbing inspector must perform a large number of obligations and duties. Indeed, the appellant agrees that he has to approve what a plumber or a septic system installer has done in order for the town to be in a position to issue a certificate of, I forget the exact word that there is there, but it's in the brief. Insofar as the declarations by the Oregon and California courts are concerned, I must respectfully disagree that they have anything at all to do with this particular case. Were that, based upon their holdings, there was any warning to the insurer in this case that in a situation where the plumbing inspector claims that his property interest in his position, his property interest in that position was affected or violated by what the selectmen did, that they had to address the policy when they issued it in anticipation of that event occurring. When, as the appellant in this case did, claims that he has a property right or a property interest to be reappointed as a plumbing inspector, he, in effect, under the law in Maine, is deemed a public employee. The cases to that effect are on page nine of the brief which I submitted. I don't know, Sam, why you're introducing into the argument this property interest issue, but you don't need it. Why are you introducing that complexity? I don't think I need it. I think it is an additional reason why, in this particular case, the claim by the appellant that he had no employment relationship with the town of Sangerville is incorrect. When he claims that he has the property right and the property interest, as he did in counts two, three, and four of his amended complaint against Burgess, the cases that have interpreted those claims treat him as a public employee. Otherwise, he would not be in a position to assert that. This goes to the point that he is not, despite what he claims, an independent contractor. I thought your whole argument was that this distinction, which appellant focuses so much on between an independent contractor, an employee, and the various legal tests that you use to sort out which is which, it doesn't even matter. I thought that was your basic position. That is my basic position. It does make no difference. But also, factually, in this particular case, I believe it is an incorrect assertion by the appellant. He is not an independent contractor. If you look at the statutes he has. Do you really want us to get into that issue? No, I do not, because I don't think it's necessary. But the point is that the appellant in this case continually argues that I am nothing but an independent contractor. Factually, I respectfully submit that's incorrect. That's not true. He has, because of those statutes, a very close employment relationship with the town. I think that the cases that the appellant. I do not understand that this came up on summary judgment. My understanding was that his status as an independent contractor was not in dispute. No, I believe that what happened was I objected to some statements on the material statement of facts that the appellant put in. The magistrate overruled my objection on the grounds that the basis of my objection did not apply to keep them out. However, the magistrate said it makes no difference whether or not I treat him as an independent contractor. The employment-related practices exclusion still applies. Does he also have a defamation claim here? There is a defamation claim, yes. By the plaintiff in count one of the complaint he filed against Mr. Burgess. And I think that to some extent it also rides over into the other counts as well, because he alleges in some of those counts that the actions in depriving him of his position and in blocking his reappointment in effect affected him in his professional reputation, a type of defamation. So the defamation claim falls within the employment practices-related exclusion. I think to the extent that the appellant argues that that can only apply to employees because of the nouns that are in that exclusion is not true, because you can have discipline. You can have evaluation, termination, for example, of the funding inspector in this case. I believe for those reasons, Your Honors, therefore, that the summary judgment in favor of Argonaut should be affirmed and that the order of the magistrate as adopted by the judge below should also be affirmed. Thank you very much. Excuse me. Before you step away, Chief Judge Lynch, do you have any questions for Appellee? I do not. All right. Thank you. Thank you, counsel. All right. You've got one minute, Appellee. Thank you, Your Honor. I will point out that the NAMBI case, the Building Association case, mentions that the employment practices endorsement, which was not applicable in that case, explicitly limited itself to employees and not independent contractors, and that, too, was an ISO policy, and that strengthened NAMBI. There was never an endorsement here, but the fact that the insurance industry sells employment practices coverage limited to employment and then tries to sell an employment practice exclusion, one would suggest that the endorsement that ISO puts out should mirror the exclusion. I want to point out as well that the vendor who stocks a school fruit machine and soda machine is providing both services and labor, and he would be covered by their argument because he could only distinguish the vendor by saying they provide goods, not services, but, in fact, most vendors to most towns provide goods and services, and they're fulfilling a public duty imposed by statute to feed the children. The only... Go ahead and finish. Judge Oswin, do you have any questions for Appellee? No, I do not. All right. Thank you. Thank you both.